UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE GOLUB CORPORATION,

                    Plaintiff,

        -against-                                        1:11-CV-1516 (LEK/CFH)

MERRYL H. TISCH; MILTON L.
COFIELD; ROBERT M. BENNETT;
JAMES C. DAWSON; ANTHONY S.
BOTTAR; GERALDINE C. CHAPEY;
HARRY PHILLIPS, III; JAMES R.
TALLON, JR.; ROGER TILLES;
CHARLES R. BENDIT; BETTY A.
ROSA; LESTER W. YOUNG, JR.;
CHRISTINE D. CEA; WADE S.
NORWOOD; JAMES O. JACKSON;
KATHLEEN M. CASHIN; and JAMES
E. COTTRELL, in their official capacities
as members of the Board of Regents of the
University of the State of New York; JOHN
B. KING, JR., in his official capacity as
Commissioner of Education of the New
York State Education Department; and
LAWRENCE H. MOKHIBER, in his
official capacity as Executive Secretary of
the New York State Board of Pharmacy,

                    Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiff The Golub Corporation ("Plaintiff") brought this action for declaratory and

injunctive relief against various New York State officials with authority to regulate pharmacies

(collectively, "Defendants"), alleging that Defendants contravened Plaintiff's constitutional right to

free speech.  Dkt. No. 1 ("Complaint"); cf. Dkt. No. 8 ("Answer").  Both sides have now moved the

Court for summary judgment.  Dkt. Nos. 15 ("Defendants' Motion"), 20 ("Plaintiff's Motion").  For the reasons that follow, the Court denies both Motions.

## II.    BACKGROUND

Plaintiff is a Delaware corporation that operates 49 pharmacies in New York State, 45 of them within Plaintiff's "Price Chopper" supermarkets and 4 under the name "Price Chopper House Calls Pharmacy."  Dkt. No. 15-1 ("Defendants' Facts") ¶¶ 1-3; Dkt. No. 20-7 ("Plaintiff's Facts") ¶¶ 1-3.  Under Plaintiff's customer rewards program, called "Price Chopper Fuel Advant*Edge*" ("Advant*Edge*"), an enrolled customer becomes eligible for a discount of 10 cents per gallon up to 20 gallons at participating Sunoco gas stations each time she spends $100 on qualifying purchases at Plaintiff's stores.[1]  Defs.' Facts ¶¶ 20-21; Pl.'s Facts ¶¶ 20-21; Dkt. No. 15-4 ("Defendants' Memorandum") at 5; Dkt. No. 20-8 ("Plaintiff's Memorandum") at 2.

Prior to February 10, 2010, Advant*Edge* brochures stated that customers' prescription drug co-pays were qualifying purchases.  Defs.' Facts ¶¶ 23, 25; Pl.'s Facts ¶¶ 23, 25; Dkt. No. 15-3 ("Grogan Declaration") Ex. A.  On February 10, 2010, the New York State Education Department's Office of Professional Discipline issued a letter ("OPD Letter") warning Plaintiff that the Advant*Edge* brochures' statements that prescription drug purchases counted toward the discount on Sunoco gas constituted actionable professional misconduct.[2]  Defs.' Facts ¶ 27; Pl's Facts ¶¶ 23, 25, 27; Grogan Decl. Ex. B; see N.Y. COMP. CODES R. & REGS. tit. 8, § 29.1(b)(12)(i)(e).  Plaintiff

---

[1] When the Complaint was filed, the Advant*Edge* threshold spending requirement was $50, but in May 2012 it was increased to $100.  Dkt. No. 15-4 ("Defendants' Memorandum") at 5 n.1; Dkt. No. 20-8 ("Plaintiff's Memorandum") at 2 & n.1.

[2] A determination of professional misconduct may result in censure, reprimand, revocation, or suspension of that establishment or pharmacist's registration and right to do business in New York State, and monetary penalties.  Defs.' Facts ¶¶ 18-19; Pl.'s Facts ¶¶ 18-19.

thereupon altered the Advant*Edge* brochures to state that prescription co-pays do not qualify in New York.  Defs.' Facts ¶ 28; Pl.'s Facts ¶¶ 23, 25, 28.  Other than sending the letter, Defendants have taken no actions against Plaintiff.  Defs.' Facts ¶¶ 29, 45; Pl.'s Facts ¶¶ 29, 45, 49.

On December 23, 2011, Plaintiff filed this action seeking: (1) a declaration that the professional misconduct rule barring advertisement of the inclusion of prescription co-pays in the Advant*Edge* program is an unconstitutional restriction on speech; and (2) an injunction prohibiting Defendants from enforcing or threatening to enforce that rule.  Compl.  Defendants filed an Answer on March 23, 2012, and moved for summary judgment on September 21, 2012.  Ans.; Defs.' Mot.  Plaintiff responded and cross-moved for summary judgment on January 2, 2013; replies followed.  Pl.'s Mot.; Dkt. No. 27-1 ("Defendants' Reply"); Dkt. No. 29 ("Plaintiff's Reply").

## III.   LEGAL STANDARD

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986).  If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id.  This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).  A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them."  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.  Commercial Speech

The First Amendment to the United States Constitution states, "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ."  U.S. CONST. amend. I.  This prohibition applies generally to state governments as well by virtue of the Fourteenth Amendment.  See U.S. CONST. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489 n.1 (1996) ("[T]he [First] Amendment applies to the States under the Due Process Clause of the Fourteenth Amendment."); Shelley v. Kraemer, 334 U.S. 1, 15 (1948) ("The federal guarantee of due process extends to state action through its judicial as well as through its legislative, executive, or administrative branch of government." (quoting Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U.S. 673, 680 (1930) (internal quotation marks omitted))).  "Speech in aid of pharmaceutical

marketing . . . is a form of expression protected by . . . the First Amendment." Sorrell v. IMS Health Inc., 131 S. Ct. 2653, 2659 (2011).

"Central Hudson sets forth a four-part test to determine whether commercial speech is protected by the First Amendment." United States v. Caronia, 703 F.3d 149, 164 (2d Cir. 2012) (citing Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557 (1980)).

> First, as a threshold matter, to warrant First Amendment protection, the speech in question must not be misleading and must concern lawful activity. Second, to justify regulations restricting speech, the asserted government interest must be substantial. Third, the regulation must directly advance the governmental interest asserted "to a material degree." . . . Fourth, the regulation must be "narrowly drawn," and may not be more extensive than necessary to serve the interest.

Id. (citations omitted) (quoting 44 Liquormart, 517 U.S. at 505; Cent. Hudson, 447 U.S. at 565-66). "Under the commercial speech inquiry, it is the [government's] burden to justify its content-based law as consistent with the First Amendment." Id. (quoting Sorrell, 131 S. Ct. at 2667) (alteration in original) (internal quotation marks omitted).

## IV.   DISCUSSION

### A. Standing

As a threshold matter, Defendants argue that Plaintiff lacks standing to bring this suit because there has been no administrative action taken against Plaintiff and Plaintiff therefore has not suffered the required injury.[3] See Defs.' Mem. at 7-9; Vt. Right to Life Comm., Inc. v. Sorrell, 221

---

[3] Defendants also argue that because state proceedings to discipline pharmacists implicate important state interests and may be judicial in nature, see Myer v. Backus, No. 06-CV-0229, 2007 WL 2908307, at *3 (D. Vt. Oct. 2, 2007), and because Plaintiff has not demonstrated that it could not adequately raise its constitutional challenge in such a proceeding, the Court should abstain from deciding this case under Younger v. Harris, 401 U.S. 37 (1971). Defs.' Mem. at 9-10; see Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423 (1982). Because the parties agree that no state disciplinary action has been commenced against Plaintiff and nothing in the record suggests otherwise, Younger abstention is inappropriate. See Defs.' Facts ¶ 45; Pl.'s

F.3d 376, 382 (2d Cir. 2000) ("[A]t an irreducible minimum, Art. III [of the U.S. Constitution]

requires the party who invokes the court's authority to show that he personally has suffered some

actual or threatened injury as a result of the putatively illegal conduct of the defendant." (alteration

in original) (internal quotation marks omitted)).  That Plaintiff changed its advertisement in light of

the OPD Letter threatening professional misconduct proceedings, however, is sufficient to confer

standing on Plaintiff.  See Vt. Right to Life, 221 F.3d at 382 ("A plaintiff bringing a pre-

enforcement facial challenge against a statute need not demonstrate to a certainty that it will be

prosecuted under the statute to show injury, but only that it has 'an actual and well-founded fear that

the law will be enforced against' it." (quoting Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 393

(1988))).

**B. Scope of Plaintiff's Claim**

Defendants point out that a First Amendment overbreadth challenge, which is an exception

to the general ban on third-party standing, is not available in the context of professional advertising.

Defs.' Mem. at 9; see Bates v. State Bar of Ariz., 433 U.S. 350, 381 (1977) ("Since advertising is

linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to

being crushed by overbroad regulation. . . .  [W]e decline to apply [overbreadth analysis] to

professional advertising, a context where it is not necessary to further its intended objective.");

accord Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982) (citing

Cent. Hudson, 447 U.S. at 565 n.8).  See generally Bates, 433 U.S. at 379-81 (describing First

Amendment overbreadth doctrine).  Nor does Plaintiff argue that the professional misconduct rule at

issue here is invalid in all applications.  See Compl.; City Council v. Taxpayers for Vincent, 466

---

Facts ¶ 45.

U.S. 789, 796 (1984) ("There are two quite different ways in which a state or ordinance may be considered invalid 'on its face'—either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'").  Accordingly, the Court addresses Plaintiff's First Amendment claim only on an as-applied basis.

**C.  § 29.1(b)(12)(i)(e)**

At issue here is an advertising regulation promulgated by the New York State Education Department, which oversees the practice of licensed pharmacists.  The regulation provides, in relevant part:

> Unprofessional conduct in the practice of any profession licensed, certified or registered pursuant to title VIII of the Education law . . . shall include: . . .
>     12. advertising or soliciting for patronage that is not in the public interest:
>         i. Advertising or soliciting not in the public interest shall include, but not be limited to, advertising or soliciting that: . . .
>             e. offers bonuses or inducements in any form other than a discount or reduction in an established fee or price for a professional service or product.

N.Y. COMP. CODES R. & REGS. tit. 8, § 29.1(b)(12)(i)(e).[4]  Plaintiff and Defendants agree that this regulation bars the statements previously contained in Plaintiff's Advant*Edge* brochures regarding the inclusion of prescription co-pays in the Advant*Edge* calculus.  Defs.' Facts ¶¶ 36-37; Pl.'s Facts ¶¶ 36-37.  The Court analyzes this regulation under the four-part Central Hudson test set forth *supra*.

*1.  Honest Speech About Lawful Activity*

Defendants do not allege that Plaintiff's advertisement was false, misleading, or otherwise

---

[4] Title VIII of the N.Y. Education Law is titled "The Professions"; article 137 pertains to pharmacy.  See N.Y. EDUC. LAW § 6800 et seq.

deceptive.[5]  See Ans.; Def.'s Facts; Defs.' Mem.; Defs.' Reply at 2 ("The State defendants in this matter do not assert that plaintiff's advertising is facially misleading.").  Rather, Defendants argue that inclusion of prescription co-pays in the Advant*Edge* calculus—the subject of Plaintiff's advertisement—is unlawful because it is a bonus or inducement that: (1) is "dependent upon receiving consideration from a third parties [sic], i.e. participating SUNOCO stations, in violation of [N.Y. Compilation of Codes, Rules and Regulations title 8,] § 29.1(b)(3)"; (2) is "calculated as a percentage of the amount of money that [Plaintiff's] customers spend in its stores, and may be dependent on some form of fee-splitting, which would be a violation of [id.] § 29.1(b)(4)"; and (3) "results in a differential price to different consumers that is not the result of a change to the established fee or price for the medication or other professional service, in violation of . . . [N.Y.] Education Law § 6826."[6]  Defs.' Mem. at 12; Defs.' Reply at 2-3.

### a.  Fee-Splitting

Section 29.1(b)(3) establishes that unprofessional conduct by a licensed professional includes "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services."  N.Y. COMP. CODES R. & REGS. tit. 8, § 29.1(b)(3).  Section 29.1(b)(4) likewise forbids "permitting any person to share in the fees for professional services."  Id. § 29.1(b)(4).  Both of these regulations are designed to implement N.Y.

---

[5] Professional misconduct provisions not at issue here prohibit advertisements that are "false, fraudulent, deceptive or misleading," guarantee a service, make quality claims that cannot be substantiated, or use misleading testimonials.  See N.Y. COMP. CODES R. & REGS. tit. 8, § 29.1(b)(12)(i)(a)-(d), (iv)(a)-(e).

[6] Defendants also cite N.Y. Compilation of Codes, Rules and Regulations title 8, § 29.1(b)(12)(3), but that provision does not exist.  See Defs.' Mem. at 12; N.Y. COMP. CODES R. & REGS. tit. 8, § 29.1.  The Court presumes Defendants meant to cite § 29.1(b)(12)(i)(e) again.

Education Law § 6509-a, which provides that a professional's license "may be revoked, suspended or annulled," or other penalties applied, if she

> has directly or indirectly requested, received or participated in the division, transference, assignment, rebate, splitting or refunding of a fee for, or has directly requested, received or profited by means of a credit or other valuable consideration as a commission, discount or gratuity in connection with the furnishing of professional care, or service, including . . . drugs, medication or medical supplies or any other goods, services or supplies prescribed for medical diagnosis, care or treatment . . . .

N.Y. EDUC. LAW § 6509-a.

Defendants assert that Advant*Edge* "may be dependent on some form of fee splitting" but do not explain how or submit any evidence detailing the aspect of the program that is tantamount to fee splitting. Defs.' Mem. at 12. Defendants apparently moved for summary judgment before the parties engaged in any discovery. See generally Dkt. Plaintiff's Vice President of Pharmacy, Health & Wellness stated under oath that Plaintiff "does not engage in any practice prohibited by Education Law § 6509-a," but Plaintiff has not provided any evidence detailing its arrangement with Sunoco. Dkt. No. 20-1 ("Mainella Affidavit") ¶ 24; see Dkt.

The record currently before the Court fails to demonstrate clearly the financial underpinnings of the Advant*Edge* program as it relates to Plaintiff's pharmacies. Because prescription co-pays are qualifying purchases under the Advant*Edge* terms, a member could, by spending $100 in co-pays at one of Plaintiff's pharmacies, earn what is essentially a coupon for 10 cents off a gallon of Sunoco gas, up to 20 gallons—a value of up to $2. However, the Court cannot determine on the barren record before it whether, for example, Plaintiff makes payments to Sunoco to partially offset the lost revenues from these Advant*Edge* coupons that might, where co-pays are involved, be tantamount to sharing in the fees for professional services; or whether no valuable consideration passes between the companies relating to Advant*Edge* because the program's inherent encouragement to consumers

9

to purchase their gas from Sunoco at a discount is sufficient to justify the program's existence. Because the Court cannot determine whether Plaintiff's actions are lawful, it cannot determine whether Plaintiff's advertisement of those actions met the first prong of the <u>Central Hudson</u> test and therefore cannot render summary judgment in favor of any party now.

### b.  Differential Price

N.Y. Education Law § 6826 is titled "Drug retail price lists" and contains several provisions generally relating to the timely posting of a pharmacy's retail price, including any potentially applicable discounts, for the usual dose of each of the 150 most frequently prescribed drugs as determined by the New York Pharmacy Board.  <u>See</u> N.Y. EDUC. LAW § 6826.  Plaintiff's Vice President of Pharmacy, Health & Wellness stated under oath that Plaintiff "has fully complied with the mandate under Education Law § 6826 to compile and maintain prescription drug lists." Mainella Aff. ¶ 24.  Defendant has adduced nothing to the contrary, and the Court cannot deduce how § 6826 would have any effect on the Advant*Edge* program.  <u>See</u> Dkt.  Each customer pays the retail price for her prescribed drug, or the portion thereof that her insurance company requires as co-payment, and some customers, in so doing, earn credit toward a discount on a different product. Accordingly, the Court cannot find that § 6826 outlaws inclusion of prescription co-pays in the Advant*Edge* program; therefore, the Court cannot grant summary judgment to Defendants on this basis either.

### 2.  Remaining <u>Central Hudson</u> Prongs

Because the Court cannot resolve the first prong of the <u>Central Hudson</u> test on the current record, it will not proceed to consider the remaining prongs, *viz.*, the presence of a substantial

government interest,[7] the regulation's material advancement of that interest, and the narrow tailoring of the regulation.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 15) for summary judgment is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 20) for summary judgment is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

Dated:        May 23, 2013
              Albany, NY

Lawrence E. Kahn
U.S. District Judge

_____

[7] The parties agree that the government "has a substantial interest in improving and enhancing the provision of health care services to citizens."  Defs.' Facts ¶ 44; Pl.'s Facts ¶ 44.